# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>v.<br><br>Gary Albert Collyard,<br><br>          Defendant. | Case No. 12-CR-58 (SRN)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

David J. MacLaughlin and Benjamin F. Langner, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

William J. Mauzy and Casey T. Rundquist, The Law Offices of William J. Mauzy, 510 First Avenue North, Suite 610, Minneapolis, MN 55403, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Gary Albert Collyard's ("Defendant") Amended Motion to Withdraw Guilty Pleas. [Doc. No. 59]. The United States of America ("the Government") opposes Defendant's motion. [Doc. No. 65]. On May 13, 2013, the Court conducted an evidentiary hearing to examine evidence relating to Defendant's amended motion. (Min. Entry for Evidentiary Hr'g [Doc. No. 73].) For the reasons that follow, the Court denies Defendant's motion.

## I.     BACKGROUND

### A.     Factual Background

On February 22, 2012, the United States Attorney for the District of Minnesota charged Defendant with conspiracy to commit securities fraud (Count 1) in violation of

15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 371.  (Felony

Information [Doc. No. 1].)  Defendant was also charged with conspiracy to commit bank

fraud (Count 2) in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 371.  (Id.)  On February

27, 2012, the Government filed an Amended Information, changing the alleged start date

of Defendant's conspiracy to commit securities fraud from January 2010 to January 2006.

(Am. Felony Information [Doc. No. 6].)  Defendant pled guilty to Counts 1 and 2 of the

Amended Information under the terms of a written plea agreement.  (Plea Agreement ¶ 1

[Doc. No. 11]; Plea Hr'g Tr. at 32 [Doc. No. 61-1].)

At the change-of-plea hearing on February 27, 2012, this Court examined

Defendant's competency to enter a plea.

> THE COURT:    I have to ask you certain questions that I have to ask
> everybody.  Have you had any alcohol in the last 24 hours?
>
> DEFENDANT:    No, Your Honor.
>
> THE COURT:    Have you had any drugs in the last 24 hours?  And before you
> answer that, I mean over-the-counter drugs, prescribed drugs, or illicit drugs.
>
> DEFENDANT:    I am on a prescribed medication called Vicodin.  And the last
> time that I took that was Saturday afternoon.
>
> THE COURT:    Okay.  So, you haven't had any Vicodin since Saturday
> afternoon?
>
> DEFENDANT:    That is [sic] correct.
>
> THE COURT:    And here we are Monday afternoon.
>
> DEFENDANT:    That is correct. I am taking Tylenol.
>
> THE COURT:    Tylenol, okay. Did you take the prescribed amount of Tylenol
> in the last 24 hours?

DEFENDANT:          Oh, yes.

THE COURT:          Have those drugs in any way affected your ability to think clearly here today?

DEFENDANT:          No, Your Honor.

(Plea Hr'g Tr. at 5.)

The Court also asked whether Defendant was satisfied with the performance of

then-counsel, Thomas Brever.

THE COURT:          Have you told him [Mr. Brever] everything you want him to know about your case?

DEFENDANT:          I have tried to, Your Honor.

THE COURT:          Okay. Are you satisfied with his services?

DEFENDANT:          Yes, Your Honor.

THE COURT:          When you say you have tried to, is there something that you haven't had a chance to talk to him about?

DEFENDANT:          Your Honor, not to be persnickety, I am just trying to gather up all of the information I know. I think I have.

THE COURT:          Have you withheld anything from him?

DEFENDANT:          No, Your Honor.

(Id. at 6.)

Mr. Brever described his interactions with Defendant during the course of the

representation and his impressions of Defendant's competency to enter a plea.

THE COURT:          Mr. Brever, have you had a fair amount of time to investigate the law and the facts of your client's case and discuss them with him?

MR. BREVER:       Yes, I have, Your Honor.  I represented Mr. Collyard for several months, now.  We have received information from governmental authorities regarding the underlying facts of this case.

Mr. Collyard and I have discussed those facts, repeatedly.  We have adopted positions towards them, discussed them in detail, and considered carefully what to do in this circumstance.  And after consideration of all of the evidence, Mr. Collyard, after discussion with me, is here today to plead guilty.

DEFENDANT:       Yes, Your Honor.  We certainly did.

THE COURT:       Thank you.  Are you satisfied Mr. Collyard understands the full range of punishments he faces in this case?

MR. BREVER:       Yes, Your Honor, we discussed that in detail, as well.  And I think Mr. Collyard is fully aware of the Sentencing Guidelines which this Court will consider in the sentencing, and the various permutations that take place within those Guidelines.

THE COURT:       And do you believe he is competent to plead guilty?

MR. BREVER:       I do, Your Honor, Mr. Collyard has exhibited very rational, logical thinking as part of this process here.

(Id. at 6-7.)

At the plea hearing, the Court explained to Defendant his constitutional rights, including the rights to trial by jury, to confront the witnesses against him, to put the Government to its burden of proof, and to remain silent or testify at trial.  (Id. at 7-10.) Defendant indicated that he understood these rights.  (Id. at 8-10.)  Defendant also confirmed that if he pled guilty, he would not be able to withdraw his plea.  (Id. at 10.) The Court then reviewed Counts 1 and 2 with Defendant and their possible penalties.  (Id. at 12-13.) The Court also informed Defendant of the nature of supervised release and the possibility of losing his rights to vote, hold public office, serve on a jury, possess any

kind of gun or firearm, or eligibility to receive benefits from the United States
Government. (Id. at 14.)

Defendant confirmed that he had read the plea agreement with Mr. Brever and by
himself, "line by line and page by page." (Id. at 23.) Defendant also confirmed that he
had the opportunity to ask Mr. Brever about all the information in the plea agreement,
and that the Government in fact changed some of the items in the plea agreement based
on information provided by Mr. Brever. (Id. at 23-24.) Defendant further confirmed that
he had read through the factual basis section in the plea agreement, and that all of the
facts set forth were true and accurate. (Id. at 24.) The Assistant United States Attorney
then thoroughly questioned Defendant about his understanding and acceptance of the
facts stipulated under the plea agreement, to which Defendant responded in the
affirmative. (Id. at 24-31.) Subsequently, the Court posed the following questions:

> THE COURT:        . . . Mr. Brever, anything you would like to say at this point?
>
> DEFENDANT:        No.  Thank you very much.
>
> THE COURT:        Mr. Collyard, are you making this plea voluntarily, sir, and of
> your own free will?
>
> DEFENDANT:        Yes, Your Honor.
>
> THE COURT:        Has anyone forced you, threatened you, coerced you, or done
> any violence to you or anyone else in order to get you to plead guilty?
>
> DEFENDANT:        No, Your Honor.
>
> THE COURT:        Are you pleading guilty because you are guilty of these
> crimes?
>
> DEFENDANT:        Yes, Your honor.

THE COURT:        Mr. Brever, anything before he enters his plea?

DEFENDANT:        No, thank you.

THE COURT:        Mr. Wilton, anything further?

DEFENDANT:        No, thank you.

THE COURT:        Mr. Collyard, do you have any questions of me or your counsel before you enter your plea?

DEFENDANT:        No, Your Honor.

THE COURT:        Mr. Collyard, how, then, do you plead to Counts 1 and 2 of the information? Do you plead guilty or not guilty?

DEFENDANT:        I plead guilty.

(Id. at 31-32.)

Consequently, this Court found Defendant "clearly mentally competent," "capable of entering an informed plea," and "aware of the nature of the charges against him, the nature of these proceedings, and the consequences of his plea of guilty." (Id. at 32.) The Court also found Defendant's guilty plea to be free, voluntary, knowing, informed, and supported by independent facts in the record establishing all elements of the offense. (Id.) The Court accepted Defendant's plea of guilty. (Id.) On July 24, 2012, the Court scheduled Defendant's sentencing for August 29, 2012. (Notice of Setting Sentencing [Doc. No. 17].)

On August 21, 2012, Defendant filed an Affidavit in a parallel action claiming that Thomas Brever ineffectively assisted him in his criminal defense. (See SEC v. Collyard et al., Civ. No. 11-3656 (JNE/JJK), Doc. No. 91 (D. Minn.).) Specifically, Defendant asserted that he "was pressured strongly by his former attorney to enter into the plea

agreement even though [he] did not understand the serious future effects of doing so."
(Id. ¶ 2.) Defendant also claimed that Mr. Brever "told [him] he would discontinue
representing [him] if he did not sign the plea agreement." (Id.). Defendant further stated
that Mr. Brever never explained to him that being a "finder" did not subject him to
liability for conspiring with Bixby officers in the sale of Bixby Securities. (Id.) As to the
"tax fraud admissions" in the plea agreement, Defendant claimed that he believed the
matters contained in the financial statements were accurate when made. (Id.) As such,
Defendant stated that he did "not believe that he had adequate or competent legal
representation relating to his entering into the plea agreement." (Id.)

On August 23, 2012, Mr. Brever moved to withdraw from representing Defendant
in this action. (Mot. to Withdraw as Att'y [Doc. No. 19].) On August 27, 2012, this
Court held a hearing on Mr. Brever's motion and granted it. (Min. Entry for Mot. Hr'g
[Doc. No. 21].) At the hearing, Mr. Brever requested an Order Permitting Him to
Disclose Documents and Information related to his representation of Defendant, arguing
that Defendant had impliedly waived the attorney-client privilege. (Id.) The Court took
Mr. Brever's oral motion under advisement and on September 4, 2012, Mr. Brever filed a
Memorandum of Law in Support of his oral motion. (Mem. In Supp. Of Mot. for Order
Permitting Disclosure of Doc. and Information [Doc. No. 23].)

On October 19, 2012, the Court appointed the Federal Defender to represent
Defendant. (Min. Entry for Status Conference [Doc. No. 29].) On October 31, 2012, the
Office of the Federal Defender notified the Court that Charles Hawkins would represent
Defendant. (Notice of Appearance [Doc. No. 31].)

On December 14, 2012, Defendant moved to withdraw his guilty plea. (Def.'s Mot. to Withdraw Guilty Pleas [Doc. No. 33].) Defendant argued that he neither entered a knowing or voluntary guilty plea nor a waiver of his rights under the Fifth and Sixth Amendments because:

> (1) he did not receive the close assistance of counsel in this case; (2) he was not properly advised by counsel of the "finder's exception" that permits a person or entity to perform a narrow scope of activities without triggering the broker/dealer requirements of Section 15(a) of the Exchange Act; (3) he was expressly advised that the plea agreement would resolve or preclude any further claims or actions against him including the SEC action against him; and (4) that he maintained his factual innocence to counsel who pressured him to plead guilty. Stated differently, prior counsel was ineffective in failing to properly advise Mr. Collyard about the "finders exception" and the impact of his plea agreement and plea.

(Id. at 2-3.) Despite assertions to the contrary at the plea hearing about his satisfaction with Mr. Brever's services, Defendant attacked Mr. Brever's performance as "[falling] below an objective standard of reasonableness because he was not versed or educated in the law applicable to defendant's case." (Id. at 6.)

On December 19, 2012, the Government issued a subpoena duces tecum requesting that Mr. Brever produce "[a]ll documents in your possession of any nature relating to your representation of [Defendant]." (Decl. of Thomas E. Brever, Ex. D [Doc. No. 37-2].) The subpoena also sought Mr. Brever's testimony pertaining to Mr. Brever's communications with Defendant in this proceeding. (Id.)

On January 7, 2013, counsel for Mr. Brever filed a Motion for Protective Order and for an Order Permitting Disclosure of documents and other information relevant to Defendant's allegations of ineffective assistance of counsel. (Thomas E. Brever's Mot. for Protective Order and for Order Permitting Disclosure [Doc. No. 35].) On January 8,

2013, the Court granted Mr. Brever's request to produce attorney-client privileged documents related to Defendant's claim of ineffective assistance of counsel in the event that Defendant proceeded with allegations of ineffective assistance to support his motion to withdraw his guilty plea. (Mem., Op., and Order [Doc. No. 38].) The Court scheduled a status conference for January 10, 2013 to discuss the possibility of an <u>in camera</u> review of the identified documents ("the Brever Documents"). (<u>Id.</u>)

At the status conference on January 10, 2013, the Court directed Mr. Brever to produce the identified documents to the Court for <u>in camera</u> review. (Min. Entry for Status Conference [Doc. No. 39].) Mr. Brever provided the documents, Bates-stamped BREV000001-845 and BREV001000-3048. (Order at 2 [Doc. No. 40].) The Court reviewed the Brever Documents and ordered production of the vast majority of them. (<u>Id.</u> at 4.) The Court granted Defendant the opportunity to file objections to the Court's Order, but Defendant did not do so. After the objections period expired, counsel for Mr. Brever produced documents to the Government in accordance with the Court's Order. (Notice of Compliance [Doc. No. 44].)

On March 21, 2013, Defendant obtained new legal counsel, William Mauzy. (Notice of Withdrawal and Substitution of Counsel [Doc. No. 47].) On April 19, 2013, Defendant filed an Amended Motion to Withdraw Guilty Pleas. [Doc. No. 59]. Defendant "now explicitly abandon[ed] and waive[d] any claim that his plea counsel provided him with constitutionally ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984)." (<u>Id.</u>) Instead, Defendant "now maintaine[d] only that his guilty pleas should [be] withdrawn because they were involuntary, unknowing and

unintelligent, due to his mental impairment at the time of the plea by taking prescribed medication containing the controlled substance hydrocodone." (Id.)

On May 2, 2013, the Government opposed Defendant's Amended Motion, contesting Defendant's alleged mental impairment at the plea hearing. (Government's Mot. to Deny Def.'s Mot. to Withdraw Plea Without a Hr'g [Doc. No. 65].) The Government argued that Defendant competently responded to the Court's questions at the change-of-plea hearing. (Id. at 4) The Government also argued that Defendant fabricated other bases—now explicitly abandoned and waived—for withdrawing his plea, and that fifty minutes before the plea hearing, Defendant's urine tested negative for hydrocodone. (Id. at 5.)

On May 3, 2013, the Court scheduled an evidentiary hearing on May 13, 2013 to examine evidence relating to Defendant's Amended Motion to Withdraw Guilty Pleas. (Order [Doc. No. 66].)

On May 7, 2013, Defendant moved this Court for an Order prohibiting the Government from calling Mr. Brever as a witness for the evidentiary hearing, arguing that his anticipated testimony was subject to the attorney-client privilege. (Def.'s Mot. in Limine and Req. for Return of Privileged Material [Doc. No. 68].) Defendant also requested return of all privileged documents that the Government received under the Court's February 21, 2013 Order, because Defendant had abandoned his ineffective assistance of counsel claim. (Id.)

On May 8, 2013, the Government opposed Defendant's Motion in Limine and request for return of privileged documents. (Government's Opp. To Def.'s Mot. in

Limine and for Return of Privileged Doc. [Doc. 70].)  The Government argued that Mr. Brever's observations about Defendant's physical condition and general level of functioning and orientation at the plea hearing were not privileged, because they were not based on communication and did not involve the seeking of legal advice.  (Id. at 4-5.) Regarding the requested return of the Brever Documents, the Government noted that Defendant had until March 4, 2013 to object to the Court's Order to produce these documents, but Defendant neither objected to the Order nor abandoned his ineffective assistance of counsel claims by March 4, 2013.  (Id. at 2.)

On May 10, 2013, Mr. Brever moved the Court to order the Government not to call him as a witness at the evidentiary hearing on May 13, 2013, arguing that other individuals could testify about Defendant's demeanor, conduct, and state of mind at the plea hearing.  (Thomas E. Brever's Mot. in Limine [Doc. No. 72].)

**B.** **Evidentiary Hearing on May 13, 2013**

On May 13, 2013, this Court conducted an evidentiary hearing to examine evidence relating to Defendant's Amended Motion to Withdraw Guilty Pleas.

Regarding Defendant's Motion in Limine and Request for Return of Privileged Documents [Doc. No. 68] and Mr. Brever's Motion in Limine [Doc. No. 72], the Court granted both motions to preserve the ongoing duty of confidentiality.  (Evidentiary Hr'g Tr. at 40.)

The Court received the following exhibits in evidence at the hearing:

Defendant's Exhibit 1: Defendant's Fairview Southdale Hospital medical records (February 23, 2012 admission date)

Defendant's Exhibit 2: Defendant's Fairview Pharmacy medical records

Defendant's Exhibit 3: Fairview Pharmacy Pill Bottle dated February 23, 2012, prescribed to Gary Collyard for Hydrocodone-Acetaminophen tablets

Defendant's Exhibit 4: Email exchange between Gary Collyard and lawyer dated February 23, 2012

Defendant's Exhibit 5: Notarized memo regarding a lawyer call made to Gary Collyard dated February 24, 2012

Defendant's Exhibit 6: Stipulated Instant Technologies iCUP Screening Test Manual

Defendant's Exhibit 7: Defendant's phone records (February 7, 2012 to March 6, 2012)

Defendant's Exhibit 8: Email exchange between Lonnie Pierce and Michael Brandt regarding a meeting dated February 23, 2012

Defendant's Exhibit 9: Edward J. Cone, Yale H. Caplan, David L. Black, Timothy Robert, and Frank Moser, "Urine Drug Testing of Chronic Pain Patients: Licit and Illicit Drug Patterns," Journal of Analytical Toxicology, Vol. 32, Oct. 2008.

Defendant's Exhibit 10: Curriculum Vitae of Glenn G. Hardin

(Def. Gary Albert Collyard's Exhibit List [Doc. No. 74].)

Defendant presented the following witnesses: Valerie Lennon, Lonnie Pierce, and Glenn Hardin. Following the defense witnesses' testimony, the Government orally made "the equivalent of a rule 29 motion," requesting the Court to deny Defendant's Amended Motion to Withdraw Guilty Pleas on the ground that Defendant failed to carry his burden. (Evidentiary Hr'g Tr. at 91-92.) To develop a full record, the Court denied the Government's request and asked it to proceed with its witnesses. (Id. at 93.) The Government presented the testimony of Dr. Andrew Harrison and Lesley Parsons.

The witnesses' testimony and Defendant's exhibits elicited the following facts. On February 23, 2012, Defendant underwent surgery for a drooping lower eyelid, a condition known as ectropion. (Id. at 6, 96-97; Def.'s Ex. 1.) First diagnosed with this eye condition in 2008, Defendant did not seek surgery until 2012. (Evidentiary Hr'g Tr. at 16.) The surgery on February 23, 2012 was not an emergency procedure. (Id. at 97.) Valerie Lennon, who was still married to and living with Defendant in February 2012, drove Defendant to Fairview Southdale Hospital for the surgery. (Id. at 7.) Post-surgery, Ms. Lennon accompanied Defendant, who was in a wheelchair, from the hospital's recovery room to the car. (Id.) Although heavily sedated, Defendant recognized Ms. Lennon. (Id. at 19.) Defendant requested to go to a meeting with Lonnie Pierce, with whom he was working on a business development project and had spoken by telephone that morning. (Id. at 7-8, 48; Def.'s Ex. 7 at 25.) Ms. Lennon drove Defendant to meet Mr. Pierce, but Mr. Pierce sent Defendant home when he saw Defendant's bruised and swollen condition from surgery. (Evidentiary Hr'g Tr. at 8, 50.) After Defendant returned home, he complained of pain and directly went to sleep. (Id. at 8-9.)

Defendant's eye surgeon, Dr. Andrew Harrison, prescribed hydrocodone-acetaminophen tablets, typically referred to as Vicodin, at a low-end dose of five milligrams of hydrocodone and 325 milligrams of acetaminophen for Defendant. (Id. at 100-101.) Defendant took this medication on February 23, 2012. (Id. at 8-9.) Ms. Lennon assisted Defendant with his daily needs for approximately two days, helping him take the hydrocodone-acetaminophen tablets. (Id. at 21.) By February 25, 2012, Ms.

Lennon stopped giving Defendant his medication; she did not know if he subsequently continued taking the hydrocodone-acetaminophen tablets.  (Id. at 21-22.)

On February 24, 2012, Defendant communicated by telephone with United States Probation Officer Lesley Parsons, who conducted a forty-five minute to an hour long bond interview in this matter.  (Id. at 109-110.)  During the interview, Defendant indicated that he had eyelid surgery the previous day and was taking pain medication. (Id. at 110.)  Knowing that Defendant's plea hearing was set for February 27, 2012, Ms. Parsons recommended that Defendant not take pain medication for at least twenty-four hours before this hearing.  (Id.)  Defendant agreed not to take any.  (Id.)  Ms. Parsons also instructed Defendant to report to the probation office before the hearing on February 27, 2012 to submit to a drug test.  (Id. at 111.)  While on the phone with Ms. Parsons, Defendant did not seem impaired in any way; he did not slur his speech; and he did not have trouble remembering details.  (Id.)  Defendant did not seem any different from the person he was between 1998 and 2000, when Ms. Parsons had supervised him previously. (Id.)

On February 27, 2012, Ms. Lennon drove Defendant to his change-of-plea hearing, dropping him off at the St. Paul federal courthouse.  (Id. at 10.)  In the car, Defendant was quiet, in pain, and seemed to be sleeping.  (Id. at 11.)  Defendant recognized Ms. Lennon and knew why he was going to the courthouse: to meet with his probation officer and to be in court afterward.  (Id. at 24.)  Defendant was in good-enough condition to exit the car, enter the building, and conduct his business.  (Id. at 23.) At the time, Ms. Lennon did not have concerns about Defendant's functioning.  (Id.)

Probation Officer Randy Nick administered an iCUP urine test fifty minutes before the hearing, which tested negative for hydrocodone.  (Id. at 107; Government's Mot. to Deny Def.'s Mot. to Withdraw Plea Without a Hr'g [Doc. 65 at 5].)  After the hearing, Defendant called Ms. Lennon and she picked him up from the courthouse.  (Evidentiary Hr'g Tr. at 11.)  When she arrived at the courthouse, Defendant was sitting on a bench, appearing very tired.  (Id. at 12.)  Defendant recognized Ms. Lennon, walked over to the car, and got into the car without assistance.  (Id. at 27.)  Ms. Lennon drove Defendant home and he went directly to sleep.  (Id. at 12.)

After Defendant's eyelid surgery on February 23, 2012 and in the following days, Defendant spoke regularly with Mr. Pierce by telephone.  On February 23, 2012, Defendant was on the telephone with Mr. Pierce for twenty-six minutes, starting at 7:50 p.m. (Def.'s Ex. 7 at 26.)  On February 24, 2012, Defendant and Mr. Pierce communicated by telephone eight times.  (Id.)  These telephone calls totaled eighty minutes, including a thirty-one minute call starting at 9:02 a.m. and a twenty-seven minute call starting at 8:06 p.m.  (Id.)  On February 25, 2012, Defendant and Mr. Pierce communicated by telephone five times, for approximately thirty minutes total, including an eleven-minute call starting at 9:57 a.m. and a fourteen-minute call starting at 1:04 p.m. (Id. at 26-27.)  On February 26, 2012, Defendant and Mr. Pierce communicated by telephone twice, for a total of forty-three minutes: a twenty-five minute call starting at 3:38 p.m. and an eighteen-minute call starting at 5:14 p.m.  (Id. at 27.)  On February 27, 2012, the day of Defendant's change-of-plea hearing, Defendant and Mr. Pierce communicated by telephone four times.  (Id. at 27-28.)  These calls totaled fifty-one

minutes, including a ten-minute call starting at 1:21 p.m. and a thirty-five minute call starting at 8:33 p.m. (Id.) When asked about these telephone conversations at the evidentiary hearing, Mr. Pierce stated that he did not remember any of them, that he called Defendant to see how he was doing, and that he could not recall whether the calls related to business. (Evidentiary Hr'g Tr. at 55-57.)

On February 28, 2012, Defendant had a follow-up appointment with Dr. Harrison. (Id. at 14.) Defendant seemed coherent and satisfied with Dr. Harrison's services. (Id. at 102-103.)

On March 7, 2012, Ms. Parsons interviewed Defendant in person for the presentence report. (Id. at 112.) During this meeting, Defendant did not seem impaired in any way; he did not slur his speech; he did not have trouble remembering details; and he did not complain of pain at this time. (Id. at 113.) Ms. Parsons and Defendant discussed his medical condition, and Defendant stated that he had surgery scheduled for the following day. (Id.) Defendant did not report debilitating pain as a result of his eye condition. (Id.) Defendant did not tell Ms. Parsons that he had taken Vicodin before the change-of-plea hearing, and he did not tell her that he was impaired at the time of the hearing. (Id.) At this interview, Defendant admitted to being guilty. (Id.)

On March 8, 2012, Defendant underwent a second non-emergency eyelid surgery. (Id. at 99-100.) Dr. Harrison prescribed him Tylenol 3, a combination of codeine and acetaminophen, which was not prescribed after Defendant's first surgery. (Id. at 103.)

Glenn Hardin, a forensic toxicologist, testified as an expert for Defendant. (Id. at 59.) He offered background information on the drug hydrocodone, including its

impairing effect on the body and its use as a pain reliever.  (Id. at 62.)  Mr. Hardin opined that an individual like Defendant, who took hydrocodone-acetaminophen tablets at Defendant's prescribed dose, would experience impaired judgment.  (Id. at 66-67.)  Mr. Hardin based his opinion on reviewing Defendant's medical records, Defendant's prescription bottle, the instruction manual for the iCUP urine drug test kit, and some scientific articles.  (Id. at 61.)  Mr. Hardin also stated that his opinion assumed that Defendant took this medication at the prescribed levels through and including the day of February 27, 2012, but he did not know personally whether Defendant had actually done so.  (Id. at 86-87.)  Further, Mr. Hardin opined that Defendant's urine test results were a false or meaningless negative for hydrocodone, because the iCUP test is designed to assess use of heroin.  (Id. at 76, 88-89.)

## II.    DISCUSSION

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure permits a defendant to withdraw a plea of guilty if the defendant can show a fair and just reason for requesting the withdrawal.  FED. R. CRIM. P. 11(d)(2)(B); United States v. Maxwell, 498 F.3d 799, 800 (8th Cir. 2007).  Although a defendant seeking to withdraw a plea before sentencing is given a more liberal consideration than someone seeking to withdraw a plea after sentencing, a defendant has no absolute right to withdraw a guilty plea before sentencing, and the decision to allow or deny the motion remains within the sound discretion of the trial court.  United States v. Prior, 107 F.3d 654, 657 (8th Cir. 1997). Factors to consider in determining whether to set aside a plea of guilty include whether the defendant has demonstrated a fair and just reason; whether the defendant has asserted

his innocence; the length of time between the guilty plea and the motion to withdraw; and whether the government will be prejudiced.  Id.  If the defendant fails to show a fair and just reason to withdraw the plea, the district court does not need to address any additional factors.  Maxwell, 498 F.3d at 801.  A guilty plea is a solemn act not to be set aside lightly.  Id.

Defendant seeks to withdraw his guilty plea for the second time, now explicitly abandoning his previous ineffective assistance of counsel claims and instead, embracing his mental impairment at the change-of-plea hearing.  (Def.'s Mem. In Supp. Of Am. Mot. to Withdraw Guilty Pleas [Doc. No. 60 at 2].)  Defendant attributes his alleged mental impairment to consuming hydrocodone-acetaminophen tablets and managing residual pain from eyelid surgery on February 23, 2012.  (Id.)  Further, Defendant maintains his innocence and argues that withdrawal of his guilty plea will not prejudice the Government.  (Id.)  In opposition, the Government argues that Defendant competently responded to the Court's questions at the change-of-plea hearing.  (Id.)  The Government also argues that Defendant fabricated other bases—now explicitly abandoned and waived—for withdrawing his plea, and that fifty minutes before the plea hearing, Defendant's urine tested negative for hydrocodone.  (Id. at 4-6.)

Having considered the parties' arguments and the evidence, the Court finds that: (1) neither medication nor residual pain impaired Defendant's judgment at the plea hearing on February 27, 2012; (2) despite Defendant's assertions of innocence, a sufficient evidentiary basis exists for Defendant's guilt; (3) the length of time between Defendant's guilty plea and his two motions to withdraw his guilty plea weighs against

setting aside Defendant's plea; and (4) the Government would not be prejudiced if required to try Defendant's case. Overall, the factors support denying Defendant's motion.

## A. Fair and Just Reason

Review of the plea hearing transcript shows that Defendant was not mentally impaired when he pled guilty on February 27, 2012. First, the Court explicitly explored Defendant's competence after he stated that he was "on a prescribed medication called Vicodin," and "the last time I [Defendant] took that was on Saturday afternoon [February 25, 2012]." (Plea Hr'g Tr. at 5.) The Court confirmed with Defendant that he had not consumed Vicodin since February 25, 2012. (Id.) After Defendant informed the Court that he had taken Tylenol in the last twenty-four hours, Defendant confirmed that these drugs had not affected his ability to think clearly at the hearing. (Id.) Defendant's plea counsel, Mr. Brever, agreed with Defendant's assessment of his competence, as Defendant "has exhibited very rational, logical thinking as part of this process here." (Id. at 6-7.) Second, after the Court carefully explained Defendant's constitutional rights to Defendant, he indicated that he understood these rights. (Id. at 8-10.) Defendant also confirmed that he understood that if he pled guilty, he would not be able to withdraw his plea. (Id. at 10.) Third, after the Government summarized the plea agreement at the hearing, Defendant expressed his understanding of the terms. (Id. at 15-20.) Defendant confirmed that he had read through the plea agreement with Mr. Brever and independently, doing so "line by line and page by page." (Id. at 23.) As Defendant

answered the Court's questions appropriately and responsively, he was competent to enter his guilty plea.

Testimony from the evidentiary hearing on May 13, 2013 also supports a finding that Defendant was competent when he entered a guilty plea. Ms. Lennon, who drove Defendant to and from the plea hearing, testified that on February 27, 2012, Defendant knew why he was going to the courthouse—specifically, to meet with his probation officer and to be in court afterward. (Evidentiary Hr'g Tr. at 24.) Defendant was in good-enough condition to exit the car, enter the courthouse, and conduct his business. (Id. at 23.) Ms. Lennon did not have concerns about Defendant's functioning. (Id.) When Ms. Lennon arrived at the courthouse after the hearing, Defendant recognized her, walked over, and entered the car on his own. (Id. at 27.)

Indeed, Defendant was lucid in the days leading up to and following the plea hearing. On February 24, 2012, one day after his first eyelid surgery, Defendant spoke with Ms. Parsons on the telephone for a bond interview. (Id. at 109-110.) Over the course of their forty-five minute to an hour long conversation, Defendant did not seem impaired in any way; he did not slur his speech; and he did not have trouble remembering details. (Id. at 111.) On February 28, 2012, Defendant had a follow-up appointment with Dr. Harrison, during which he seemed coherent. (Id. at 102-103.) And on March 7, 2012, when Ms. Parsons interviewed Defendant in person for his presentence report, Defendant did not seem impaired; he did not slur his speech; he did not have trouble remembering details; and he did not report being impaired at the time of the plea hearing. (Id. at 113.)

Defendant's witnesses do not bolster his assertions of mental impairment on February 27, 2012. Ms. Lennon and Mr. Hardin could not confirm that Defendant actually consumed the hydrocodone-acetaminophen tablets on the morning of his plea hearing. Ms. Lennon stopped helping Defendant take his medication on February 25, 2012, and she did not know if he continued afterward. (Id. at 21.) Mr. Hardin reviewed Defendant's medical records, the prescription bottle, the instruction manual for the iCUP urine drug test kit, and some scientific articles. (Id. at 61.) His opinion assumed that Defendant took the medication at the prescribed levels through and including the day of February 27, 2012, but Mr. Hardin did not know personally whether Defendant had actually done so. (Id. at 86-87.) Without knowledge of this information or Defendant's medical past or neurological condition, Mr. Hardin could only provide generic background information about hydrocodone and the iCUP urine drug test. (Id. at 85, 61-67, 70-77.)

Similarly, the Court finds Mr. Pierce's testimony vague and unhelpful for showing Defendant's alleged mental impairment at the plea hearing. Mr. Pierce could not remember any of his calls with Defendant on the day of Defendant's first eyelid surgery and in the following days. (Id. at 45, 56.) Mr. Pierce assumed that on these calls, he was giving Defendant "an update on stuff," "following up on other stuff," or checking on Defendant's condition. (Id. at 54-55.) Significantly, the telephone records of Defendant's calls with Mr. Pierce during this time period belie the notion that Defendant was mentally impaired at the plea hearing. Telephone records show that Defendant and Mr. Pierce communicated by telephone for twenty-six minutes after his surgery on

February 23, 2012, some eighty minutes on February 24, 2012, approximately thirty minutes on February 25, 2012, forty-three minutes on February 26, 2012, and fifty-one minutes on the day of his plea hearing, February 27, 2012. (Def.'s Ex. 7 at 26-28.) The length and frequency of these calls suggest that Defendant was not mentally impaired at the plea hearing.

Further, Defendant's assertions of mental impairment allegedly attributable to hydrocodone consumption and managing residual pain ring hollow in the context of events after Defendant's guilty plea. On August 21, 2012, Defendant first claimed that plea counsel Thomas Brever ineffectively assisted him. (See SEC v. Collyard et al., Civ. No. 11-3656 (JNE/JJK), Doc. No. 91 (D. Minn.).) On December 14, 2012, Defendant moved to withdraw his guilty plea on grounds of ineffective assistance, despite Defendant's prior statements of satisfaction with Mr. Brever's services. (Def.'s Mot. to Withdraw Guilty Pleas [Doc. No. 33]; Plea Hr'g Tr. at 6.) Defendant then explicitly abandoned his ineffective assistance of counsel claims in filing the instant motion. (Def.'s Mem. In Supp. Of Am. Mot. to Withdraw Guilty Pleas [Doc. No. 60 at 1-2].) Additionally, the Court finds Defendant's delay in asserting mental impairment troubling. In the days, weeks, and even months after the plea hearing, Defendant did not tell the Court, Probation, or the Government about any such impairment. (Id. at 113, 121.) For example, during Defendant's interview with Ms. Parsons on March 7, 2012, he did not report debilitating pain as a result of his eye condition; he did not tell Ms. Parsons that he had taken Vicodin before the plea hearing; and he did not report his impairment at the hearing. (Id. at 112-113.) It was not until December 14, 2012 that the Court learned of

Defendant's allegedly "debilitating and painful vision impairment condition" and "extreme stress and high anxiety" during the plea agreement period. (Def.'s Mot. to Withdraw Guilty Pleas [Doc. No. 33 at 7].) On April 19, 2013, the Court for the first time learned about Defendant's alleged mental impairment due to hydrocodone consumption—nearly fourteen months after the plea hearing. (Def.'s Am. Mot. to Withdraw Guilty Pleas [Doc. No. 59].) Accordingly, the Court does not find Defendant's assertions of mental impairment at the plea hearing credible.

Moreover, the Court herself engaged in a lengthy colloquy with Defendant at the plea hearing and was fully capable of assessing Defendant's competency. It was clear to the Court that Defendant fully understood all of the questions posed to him and responded appropriately. There was no interaction with Defendant at the plea hearing that caused any concern on the Court's part about the voluntariness of the plea or whether it was knowing and informed.

In light of the plea hearing, the evidence presented at the evidentiary hearing, and Defendant's conduct over the course of this matter, Defendant has not shown a fair and just reason to withdraw his guilty plea based on mental impairment.

### B. Assertion of Innocence

Defendant asserts his legal innocence in his Motion to Withdraw Guilty Pleas [Doc. No. 33 at 4], in an affidavit and response in the parallel proceeding SEC v. Collyard et al., Civ. No. 11-3656 (JNE/JJK) (Aff. Of Thomas Brever in Support of Mot. to Withdraw as Att'y, Ex. A and B [Doc. No. 20]), and in the instant Amended Motion to Withdraw Guilty Pleas [Doc. No. 60 at 9-10]. A defendant's assertion of innocence,

however, does not constitute a fair and just reason to withdraw a guilty plea if there is a sufficient evidentiary basis at the time of the plea that supports a defendant's guilt. <u>See United States v. Maxwell</u>, 498 F.3d at 801-802.

A sufficient evidentiary basis for Defendant's guilt exists here. At the plea hearing, Defendant confirmed that he had read the plea agreement with Mr. Brever and independently, "line by line and page by page." (Plea Hr'g Tr. at 23.) Defendant confirmed that he had read through the factual basis section in the plea agreement, and that all of the facts set forth were true and accurate. (<u>Id.</u> at 24.) The Assistant United States Attorney thoroughly questioned Defendant as to his understanding and acceptance of the facts stipulated under the plea agreement, to which Defendant responded in the affirmative. (<u>Id.</u> at 24-31.) Subsequently, Defendant confirmed with the Court that he did not have anything to say at this point; that he was making his plea voluntarily and because he was guilty; and that he did not have questions for the Court or his counsel before entering the plea. (<u>Id.</u> at 31-32.) Defendant then pled guilty. (<u>Id.</u> at 32.) Defendant's claims of innocence carry little weight in light of his contrary testimony under oath at the plea hearing. The Court therefore finds a sufficient evidentiary basis for Defendant's guilt.

**C. Length of Time Between Defendant's Guilty Plea and Motions to Withdraw**

The next factor to examine in determining whether to set aside a guilty plea is the length of time between the guilty plea and the motion to withdraw. <u>United States v. Prior</u>, 107 F.3d at 657. The plea hearing occurred on February 27, 2012. The preliminary presentence report was disclosed to the parties on April 9, 2012, and a final

copy was filed with the Court on April 19, 2012. (Decl. of Casey T. Rundquist, Ex. 2 [Doc. No. 61-2]). On December 14, 2012, Defendant moved for the first time to withdraw his guilty plea, essentially alleging ineffective assistance of counsel. (Def.'s Mot. to Withdraw Guilty Pleas [Doc. No. 33].) On April 19, 2013, more than a year after the plea hearing, Defendant filed his amended motion to withdraw his guilty plea, asserting grounds of impaired judgment instead of ineffective assistance of counsel. (Def.'s Am. Mot. to Withdraw Guilty Pleas [Doc. No. 59].)

After the plea hearing, nearly ten months passed before Defendant initially moved to withdraw his guilty plea, and nearly fourteen months passed before Defendant amended his motion to withdraw his guilty plea. Defendant did not protest his innocence from the beginning. The delay in filing both motions indicates that Defendant eventually regretted his guilty plea. But the "plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same." United States v. Woosley, 440 F.2d 1280, 1281 (8th Cir. 1971). Accordingly, the Court finds that this factor weighs against setting aside Defendant's guilty plea.

### D. Prejudice to the Government

The last consideration is whether the Government suffers prejudice if the Court allows Defendant to withdraw his guilty plea. The Court finds no such prejudice other than requiring the Government to prepare for trial when Defendant previously waived his jury trial rights. Accordingly, this factor weighs neither in favor of nor against withdrawing Defendant's guilty plea.

For all of these reasons, the Court finds that Defendant may not withdraw his guilty plea and denies Defendant's motion.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's Amended Motion to Withdraw Guilty Pleas [Doc. No. 59] is **DENIED.**

2.      This matter is now scheduled for sentencing on **June 25, 2013 at 2:30 p.m.** before Judge Susan Richard Nelson in Courtroom 7B, at the United States Courthouse, 316 North Robert Street, St. Paul, Minnesota.


Dated:        May 28, 2013                      s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Court Judge